# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE:

JULIE D. LYON,

   Debtor.

Case No. 19-00129-TLM

Chapter 7

## MEMORANDUM OF DECISION

**BACKGROUND AND FACTS**[1]

Julie Lyon ("Debtor") filed a voluntary chapter 7 petition on February 11, 2019, commencing this case.  Doc. No. 1.  Among the creditors listed in Debtors' schedules is JC Hospitalists, PLLC ("JCH").  Doc. No. 21 at 22.

Debtor asserts JCH holds a contingent, unliquidated and disputed unsecured claim. *Id.*  Debtor also notes that this claim was the subject of a lawsuit against Debtor and others pending at the time of bankruptcy, *JC Hospitalists, PLLC v. Julie Lyon, M.D., et al.*, Case No. CV01-17-23494, District Court of the Fourth Judicial District, State of Idaho, Ada County (the "State Court Action").  *Id.*; *see also* Doc. No. 24 at 3 (statement of financial affairs).

On May 13, JCH timely filed a complaint against Debtor commencing Adv. Proc. No. 19-06041, alleging "The Debtor's liability to JCH on its claims in the State Court

---

[1]  Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, Rule citations are to the Federal Rules of Bankruptcy Procedure, and citations to "LBR" are to the Local Bankruptcy Rules of this Court.

Action are nondischargeable debts under 11 U.S.C. § 523(a)(4) and 11 U.S.C.

§ 523(a)(6)." Adv. Doc. No. 1 at 7.[2] JCH does not there specify the amount of such

claim, nor has it filed a proof of claim in the case.[3] The First Amended Complaint

("FAC") in the State Court Action does not specify damages; it instead prays: "[t]hat the

Court enter a judgment in favor of Plaintiff and against the Defendants, including

consequential and incidental damages in an amount to be proven at trial which likely

exceeds $1,000,000." Doc. No. 65-1 at 26. The FAC also contains a jury demand.

There is no disagreement that the State Court Action has been lengthy and

litigious.[4] It commenced in December 2017 and was awaiting trial when Debtor filed her

petition for relief in February 2019. *See* Doc. No. 82 at 26 (reflecting notice of

bankruptcy filing), and 27 (reflecting the consequential vacation of a June 27, 2019

pretrial conference and a July 22, 2019 trial setting); *see also* Doc. No. 66-3 (an August

8, 2018 pretrial order setting a 10-day jury trial to commence July 22, 2019).

Two days after filing its adversary proceeding, JCH filed a "Motion for Relief

From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)." Doc. No. 66 (the "Motion").

JCH's Motion asks the Court to "lift or modify the automatic stay with respect to [the

---

[2] The bar date for complaints under § 523(c) was May 13, 2019. JCH's adversary was the only such action filed, and no complaints under § 727(a) were filed. Debtor received her discharge on June 6, 2019. Doc. No. 77.

[3] The claim bar date is July 8, 2019. JCH's counsel represented at hearing on June 24 that a claim would be timely filed.

[4] Doc. No. 82 is a corrected submission by JCH of a state court summary docket running 27 pages and covering events from December 20, 2017, through a February 14, 2019 order staying further proceedings due to Debtor's bankruptcy filing. By way of further example, Debtor's counsel in the State Court Action has filed a proof of claim for fees and costs from Dec. 22, 2017, through Feb. 10, 2019, totaling $249,891.62 of which $163,137.30 remained outstanding at the time of bankruptcy. Claim No. 9.

MEMORANDUM OF DECISION - 2

State Court Action] solely to allow JCH to determine the amount and nature of its claim

against the Debtor[.]" *Id.* at 1–2.  Debtor opposes the Motion.  Doc. No. 73

("Objection").  JCH and Debtor were heard on these matters on June 24, 2019, and the

same were taken under advisement.[5]

## DISCUSSION AND DISPOSITION[6]

JCH generally contends that several factors, including the parties' prior

investment of time and effort, the state court's expertise and familiarity with the

litigation, and the presence of non-Debtor defendants, support this Court allowing the

State Court Action to continue.  Debtor disagrees with this analysis and also argues that

JCH failed to comply with Local Bankruptcy Rule requirements and misrepresented

Debtor's prior positions taken in earlier proceedings.  JCH rejoins that Debtor failed to

appropriately address relevant case law.[7]

---

[5] The June 24 hearing on the Motion was a preliminary hearing under § 362(e)(1) and LBR
4001.2(e).  Under that Local Bankruptcy Rule, parties present argument and make representations at the
preliminary hearing as to the proof and evidence that would be presented at any final hearing.  The Court
advised the parties that it would determine, consistent with § 362(e)(1) and the Local Rule whether a final
hearing was required.  Having reviewed the matter, the Court determines the matter can be fully
addressed on the record and arguments presented and that a final hearing is not required.

[6] This Decision constitutes the Court's findings and conclusions under Rules 7052 and 9014.

[7] The submissions of and arguments by counsel for both JCH and Debtor in the present dispute
often criticized the conduct and behavior of the other, an approach that was also taken in previous
litigation in this case on JCH's request for a Rule 2004 examination.  As stated in *Tele-King Distrib. Co.
of Los Angeles v. Wyle*, 218 F.2d 940, 943 (9th Cir. 1955): "It should be noted that counsel for both sides
. . . would have made more effective presentations had they devoted less attention to each other's
shortcomings as lawyers."

MEMORANDUM OF DECISION - 3

### A.   Lack of compliance with local rules by JCH

Debtor notes, correctly, that JCH failed to fully comply with LBR 4001.2(g) governing required notices in stay lift motions and proceedings filed in this Court.[8] However, Debtor appropriately and timely responded to the Motion, and has not shown that JCH's failure created any difficulty.  The Court determines Debtor's argument (that, due to JCH's lack of compliance with the local rule, the "Motion is fatally flawed" and for that reason should be denied) is not well taken, as this suggested relief is not in proportion to the offense.

### B.   Misrepresentation of Debtor's prior position

JCH's Motion commences with a reference to certain comments about Idaho discovery rules that were made in connection with a prior Rule 2004 motion hearing before this Court.  JCH seemingly suggests that these statements made by Debtor's counsel indicate a preference or requirement for litigation in Idaho state court, to which "JCH agrees, and requests that this Court modify the automatic stay to allow JCH's claim to be liquidated in that forum."  Doc. No. 66 at 1.  Debtor deems this to "misstate[] and blatantly mischaracterize[] Debtor's counsel's argument and pleadings[.]"  Doc. No. 73 at

---

[8]  LBR 4001.2(g) provides in pertinent part:

(g) **Required notice.**

In any motion filed under this rule, the movant shall include a notice of the requirements of subdivision (c), (d)(3), and (e)(1), of this rule.

Those incorporated provisions address the timing of and content required in objections to such motions, service of the objection, and the objector's scheduling of a preliminary hearing.

MEMORANDUM OF DECISION - 4

2.[9]  Debtor argues that "JCH's deliberate mischaracterization of both legal briefing and

argument . . . cannot be conjured into some type of inferred consent by the Debtor to

relief from the automatic stay."  *Id.* at 3.

JCH did not *expressly* argue that Debtor somehow consented to stay relief.  But its

implicit suggestion, that Debtor's earlier arguments indicated she desired continued

litigation in state court, is not at all persuasive.  The Court need not validate the sense of

outrage expressed by Debtor in order to find that JCH's suggestion simply lacks merit.

### C.    The Motion

JCH's Motion is grounded on the proposition that "cause" exists under § 362(d)(1)

to terminate the automatic stay and allow the State Court Action to proceed "to determine

the nature and amount of JCH's claims against the Debtor."  Doc. No. 66 at 9.[10]  JCH

bears the burden on the Motion. [11]

The Ninth Circuit Bankruptcy Appellate Panel has held:

---

[9]  Debtor had earlier argued, in opposition to a broad Rule 2004 process requested by JCH, that the "pending proceeding rule" should bar or limit any "fishing expedition" otherwise allowable under Rule 2004.  Doc. No. 35.  On May 8 the Court ruled that a 2004 examination would be allowed, but with limits as to time for examination of Debtor and as to the documents that could be requested.  Doc. Nos. 59 (minute entry of oral decision), 60 (preliminary order).  Additionally, the Court notes that this preliminary order on the Rule 2004 request expressly required JCH to prepare a final form of proposed order in accord with the Court's ruling and obtain Debtor's endorsement of that order.  The docket does not reflect JCH's compliance.

[10]  The State Court Action was brought not only against Debtor, but also against Lyon Medical, LLC, an Idaho limited liability company and On Demand Solutions, Inc., an Idaho corporation.  This Court does not have jurisdiction over a creditor's state law claims against non-debtor parties.  The State Court Action also includes Debtor's counterclaim against JCH and third party claim against On Demand Solutions, LLC.  Debtor's claims in the State Court Action are now assets of the bankruptcy estate under § 541 and are under the control of, and subject to administration by, the chapter 7 trustee.

[11]  The movant must establish a prima facie case that "cause" exists for relief under § 362(d)(1), and the burden then shifts to the debtor to show that such relief is unwarranted.  If a movant fails to meet its initial burden, relief from the automatic stay should be denied.  *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 918 (Bankr. D. Nev. 2008).

MEMORANDUM OF DECISION - 5

What constitutes "cause" for granting relief from the automatic stay
is decided on a case-by-case basis.  In re Kronemyer, 405 B.R. at 921.

Among the factors which the bankruptcy court may consider when
deciding whether to lift the stay to permit litigation in another forum are
considerations of judicial economy, the expertise of the state court, prejudice
to the parties and whether exclusive bankruptcy issues are involved.  In re
Kronemyer, 405 B.R. at 921  In Kronemyer, the Panel agreed that the so-
called Curtis factors articulated in In re Curtis, 40 B.R. at 799–800 are
appropriate, nonexclusive, factors to consider in deciding whether to grant
relief from the automatic stay to allow litigation to continue in another forum.

*Shin v. Altman (In re Altman)*, 2018 WL 3133164, \*6 (9th Cir. BAP June 26, 2018)

(citing *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915 (9th

Cir. BAP 2009) and *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)). [12]  The BAP in

*Altman* further stated:

Also relevant is a non-exclusive list of factors identified in Tucson
Estates, 912 F.[2d] at 1167, that suggest cause for permissive abstention and,
consequently, for relief from stay.

*Id.* at \*7 (citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d

1162 (9th Cir. 1990)). [13]  *Altman* emphasizes that "Although the above referenced factors

---

[12]  The *Curtis* factors are: (1) Whether the relief will result in a partial or complete resolution of
the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the
foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been
established to hear the particular cause of action and whether that tribunal has the expertise to hear such
cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending
the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a
bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would
prejudice the interests of other creditors, the creditors' committee and other interested parties; (8)
Whether the judgment claim arising from the foreign action is subject to equitable subordination under
Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien
avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious
and economical determination of litigation for the parties; (11) Whether the foreign proceedings have
progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the
parties and the "balance of hurt."  40 B.R. at 799–800.

[13]  These factors are: (1) the effect or lack thereof on the efficient administration of the estate if
(continued)

MEMORANDUM OF DECISION - 6

may be considered by the bankruptcy court, 'cause' is a generic concept without a

specific definition that is committed to the sound discretion of the bankruptcy court on a

case-by-case basis.  *Id.* (citing *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo*

*Enters., Inc.)*, 96 F.3d 346, 351–52 (9th Cir. 1996)).

Both JCH and Debtor recognize *Curtis* and *Tucson Estates* are relevant to the

issue and that their non-exclusive factors are intended to assist the Court in resolving the

question of whether "cause" exists to lift the stay under § 362(d)(1).  *See*, *e.g.*, Doc. Nos.

66, 73, 79.  Not surprisingly, they focus on those factors that are perceived as supportive

of their respective position, and downplay or ignore those that are not.

In any given case, some factors will not apply at all, others will apply only

tangentially, and others will be directly relevant.  As this Court has stated:

> It is important to recognize that factor-driven analyses in bankruptcy law is
> more than just toting up supporting and opposing factors.  *In re Stella*, 2006
> WL 2433443, *4 (Bankr. D. Idaho June 28, 2006) ("[S]uch lists are capable
> of being misconstrued as inviting arithmetical reasoning but are merely a
> framework for analysis and not a scorecard.  In any given case, one factor
> may so outweigh the others as to be dispositive." (quoting *Fjeldsted v. Lien
> (In re Fjeldsted)*, 293 B.R. 12, 24–25 (9th Cir. BAP 2003)).

*Wolford v. Montee (In re Montee)*, 2018 WL 1305419, *3 (Bankr. D. Idaho Mar. 12,

2018) (citations omitted).  *See also In re Tactical Ordinance & Equip. Corp.*, 2005 WL

---

the Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of [the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties. *Tucson Estates*, 912 F.2d at 1167.

MEMORANDUM OF DECISION - 7

4705285, *3 (Bankr. D. Idaho Mar. 17, 2005) (considering a stay lift request in order to prosecute a state court jury trial and stating "Certain [of the *Curtis*] factors may tilt decidedly in favor of the motion, and others in the opposite direction.  Still others may add little to the balance.  At best, these factors provide analytic tools by which proof can be sifted and weighed, assisting the Court in appropriately exercising its discretion.").

The Court has evaluated the arguments of the parties as to the various factors and has independently reviewed the FAC and other documents from the State Court Action. Without belaboring details, the Court finds the majority of the relevant *Curtis* factors weigh against relief.  It will focus on but a few of the more important issues.

That stay relief and the completion of the State Court Action would result in a "complete resolution" of the issues is uncertain and, in this Court's view, unlikely. Additional litigation before this Court would be necessary, and judicial economy and expeditious resolution of litigation would not be served.[14]

JCH emphasizes that the parties "have invested heavily" in the State Court Action and have "expended substantial resources" in preparing the matter for trial, and it contends the parties' investment "would be largely squandered if the case is bifurcated into multiple proceedings or transferred to the Bankruptcy Court[.]"  Doc. No. 66.[15]  How that investment would be lost in the event stay relief is denied is not clear.  The discovery

---

[14]  Preclusion law could be implicated, but it would raise several potentially difficult issues.

[15]  The Court interprets the point raised as limited to JCH's own litigation investment and not an altruistic concern about other parties' investments.  And it can be noted that JCH did not serve the Motion on the other state court parties (Lyon Medical, LLC and On Demand Solutions, Inc.), s*ee* Doc. No. 66 at 10, and they have not been heard on this matter.

MEMORANDUM OF DECISION - 8

and evidentiary preparation would still be of value in a § 523(a)(4) and (a)(6) trial before

this Court.  If at the time Debtor's petition was filed JCH was prepared or mostly

prepared[16] to present a 10-day trial in July 2019 on its several claims against Debtor—

which under the FAC included Debtor's alleged breach of fiduciary duty, intentional

interference with contract, intentional interference with prospective economic advantage,

wrongful disassociation, unjust enrichment, breach of contract, and more—then that

preparation would assist JCH in presenting a case for nondischargeability under

§ 523(a)(4) and/or (a)(6).  The earlier investment would not be lost.

JCH argues that "[i]f the Debtor is allowed to 'camp out' in chapter 7 indefinitely

even though the discharge order has been entered, the rights of all the other parties to the

State Court Action will be severely prejudiced."  Doc. No. 79 at 11.  And JCH claims that

"all" of the "substantial resources" it invested "will be lost if the case malingers with no

solution or timeline for resolving it, as the Debtor appears to be advocating."  *Id.* at 12.

Its view of Debtor's "position" is hyperbolic.[17]  JCH's evident concern that the Court

does not or would not deliberately manage nondischargeability litigation before it is

perhaps most generously viewed as uninformed.

---

[16]  JCH indicated additional depositions were anticipated between the bankruptcy petition date and the scheduled trial date.

[17]  In carefully reviewing Debtor's filings and the arguments of her counsel, the Court concludes she is not "camping out" or "malingering" or implementing similar stratagems of delay.  Her bankruptcy set a date for the timely filing of complaints objecting to dischargeability of debt.  JCH filed such an action and, three days later, Debtor waived service of the summons and complaint.  She thereafter timely responded with a motion to dismiss that complaint, and that motion will be heard on August 5.

MEMORANDUM OF DECISION - 9

JCH also argues that the state court has "expertise" in this matter, which relates to the factor of economical and expeditious administration even if the state court would not be considered a "specialized tribunal." JCH does not explain the nature of the expertise, though this Court's experience allows it to assume Idaho state courts hear commercial disputes of this nature regularly, much as this Court hears such disputes. Perhaps the argument is more that the state court has become familiar with the matter and the litigants. *See*, *e.g.*, Doc. No. 79 at 3 (in which JCH references the "advanced stage" of the State Court Action, the number of substantive motions heard, etc.). The Court would not gainsay such advantages. It would note, however, that the final state court pretrial order issued by Fourth Judicial District Judge Reardon, Doc. No. 66-3, not only set a trial date but provided specific notice that seven potential alternative senior judges and "all sitting Fourth District Judges" may preside at trial. *Id.* at 2. This dilutes the weight of the "familiarity" contention.

The Court is required to, and has, weighed all the factors identified in the case law to the extent they have arguable relevance. It concludes that the most significant factor here is the presence of the § 523(a)(4) and § 523(a)(6) claims in JCH's adversary proceeding. These are "core" matters. *See* 28 U.S.C. §§ 157(b)(1), (b)(2)(I). This Court has exclusive jurisdiction to hear § 523(a)(2), (4) and (6) cases. *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1043 (9th Cir. 2014). This Court regularly determines, in such proceedings and under its core jurisdiction, whether a debtor owes a debt to the creditor, the amount of that debt, and the alleged nondischargeability of that debt. "It is well accepted that this Court can establish the amount of a debtor's liability in the process and

MEMORANDUM OF DECISION - 10

context of determining whether such debt is nondischargeable." *In re Frantz*, 2015 WL

1778068, *13 (Bankr. D. Idaho Apr. 16, 2015) (citing *Sasson v. Sokoloff (In re Sasson)*,

424 F.3d 864, 867–70 (9th Cir. 2005), and *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d

1015, 1017–18 (9th Cir. 1997)).  As *Smith* noted,

> Any inquiry should start with the basic proposition that the nondischargeability allegation is a core matter for which the bankruptcy court has exclusive jurisdiction. . . .  Intertwined with the nondischargeability determination, however, is the determination of whether there is a debt owed, and if so, its amount.  In the Ninth Circuit, this is a determination that can be made by the bankruptcy court without a jury.

389 B.R. at 914 (citing *Sasson*)).

In addition to the authorities previously mentioned, the decision of the BAP in

*Schneider v. Jordan (In re Jordan)*, 2010 WL 6259987 (9th Cir. BAP June 29, 2010), is

instructive.  The bankruptcy court there had denied a motion for relief from the automatic

stay to continue with proceedings in state court in which the debtor (Jordan) had alleged

claims against her employer, a law firm, and one of the firm's lawyers for discrimination,

sexual harassment and wrongful termination.  The lawyer had filed a cross-complaint

against Jordan for stalking, civil extortion, and intentional infliction of emotional distress.

The firm and lawyer received a summary judgment ruling on Jordan's complaint and,

immediately following that hearing and ruling, Jordan filed her bankruptcy petition,

staying the ability of the firm and lawyer to obtain a judgment as to the complaint and

staying the lawyer from proceeding on the cross-complaint.

With this background, the BAP noted the factors which inform the exercise of the

bankruptcy court's discretion in considering relief from stay in order to continue the

litigation.  It stated:

MEMORANDUM OF DECISION - 11

While some of these considerations may have militated in favor of allowing litigation to proceed in state court, the bankruptcy court clearly found the predominant consideration was that Schneider's claims went to the issue of dischargeability under the Bankruptcy Code. A bankruptcy court is usually well within its discretion to deny relief from the automatic stay to continue state court litigation where issues of nondischargeability are present. Indeed, Schneider has not cited a single case where it was held to be error for a bankruptcy court to retain jurisdiction to hear dischargeability issues. We cannot say that such a decision in this case was an abuse of discretion.

*Id.* at *3 (internal citations omitted).

The Court finds and concludes that JCH's burden has not been met, and good and sufficient "cause" has not been shown to terminate the § 362(a) stay and allow the State Court Action to proceed insofar as the claims against Debtor.[18]

**CONCLUSION**

This Court concludes that the Motion will be denied. An order will be entered accordingly.

DATED:  July 2, 2019

TERRY L. MYERS
U.S. BANKRUPTCY JUDGE

---

[18]  The issue of stay relief relates to JCH's complaint against the Debtor. The Court expresses no opinion as to the state court's ability to hear those aspects of the State Court Action brought against parties other than Debtor. And it has noted, *supra*, that claims asserted in that litigation *by* Debtor are now property of the bankruptcy estate and subject to the chapter 7 trustee's discretion and administration.

MEMORANDUM OF DECISION - 12